United States District Court
Southern District of Texas
**ENTERED**
October 06, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| DONAVYN L KELLY, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:26-cv-00143 |
| | § | |
| TRANSUNION, LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is a motion to dismiss filed by Defendant TransUnion, LLC (Dkt. 7), and a motion for default judgment filed by Plaintiff Donavyn Kelly (Dkt. 9). For the reasons discussed below, both motions should be denied.

## BACKGROUND

Kelly brings this case against TransUnion, a credit reporting agency ("CRA") alleging violations of the Fair Credit Reporting Act ("FCRA"). *See* 15 U.S.C. §§ 1681–1681x. Kelly alleges that TransUnion failed to undertake a reasonable investigation after Kelly disputed the validity of delinquent child support obligations that appeared on Kelly's credit report, and that TransUnion has continued to falsely report that Kelly is delinquent on his child support obligations despite Kelly's providing documentation to TransUnion that shows the information is inaccurate.

Kelly first filed a formal dispute with TransUnion on May 27, 2025. *See* Dkt. 1-1 at 11–12. TransUnion investigated and, based on the information that TransUnion received from the Office of the Texas Attorney General ("OAG"), TransUnion verified the delinquent child support obligations and continued to report them. *See id.* at 14.

On July 18, 2025, Kelly filed a complaint with the Consumer Financial Protection Bureau ("CFPB"). *See id.* at 15. In connection with that complaint, Kelly

provided documentation from Indiana—the state that requires him to make child support payments—showing that he was "current on [his] child support with a credit." *Id.* Kelly also reported the numerous communications that he had with the OAG regarding its inaccurate reporting of his Indiana child support obligations. *See id.* at 15–16. That same day, the CFPB forwarded Kelly's complaint and documentation to TransUnion. *See id.* at 16. On September 16, 2025, TransUnion again responded that the delinquent child support obligations that it reported on Kelly's credit report from the OAG were "VERIFIED AS REPORTED." *Id.* at 17.

On October 24, 2025, Kelly filed a second complaint with the CFPB again disputing TransUnion's allegedly inaccurate reporting of his delinquent child support obligations. *See id.* at 25. In connection with his October 24, 2025 complaint to the CFPB, Kelly provided a September 24, 2025 email from Rene Zapata of the OAG's Child Support Division, in which Zapata wrote: "Texas can see per an interface that you are current [on child support obligations]" but that Texas needed documentation from Indiana in order to update Kelly's case. *Id.* at 22. Kelly also provided the CFPB with all payment receipts from 2025 to show that he had fulfilled his child support obligations. *See id.* at 25. Kelly's complaint and documentation were sent to TransUnion by the CFPB on October 24, 2025. *See id.* at 27. On December 4, 2025, the CFPB marked Kelly's October 24, 2025 complaint as a duplicate and no further action was taken. *See id.*

On March 9, 2026, Kelly submitted yet another dispute to Transunion. *See id.* at 29–31. On April 14, 2026, TransUnion again verified Kelly's reportedly delinquent child support obligations as reported and increased the total balance for which he was reportedly delinquent. *See id.* at 34–35.

On May 1, 2026, Kelly instituted this proceeding. According to the return of service, TransUnion was served on May 7, 2026. *See* Dkt. 6. Thus, TransUnion's answer or response to Kelly's complaint was due on May 28, 2026. *See* Fed. R. Civ. P. 12(a)(1)(A)(i) (a defendant must serve an answer "within 21 days after being served with the summons and complaint"). On May 28, 2026, at 11:55 a.m. CDT,

TransUnion timely filed the instant motion to dismiss. *See* Dkt. 7. Five hours later, the clerk's office docketed a motion for default judgment that Kelly filed against TransUnion. *See* Dkt. 9. An entry of default is appropriate only when a party "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). It is axiomatic that where a party files an answer or dispositive motion before their time to answer has expired, there is "no basis whatsoever . . . for the entry of default." *Benitez v. Atkins*, 776 F. App'x. 253, 255 (5th Cir. 2019). Because TransUnion timely filed its motion to dismiss before its deadline to answer, I recommend that Kelly's motion for default judgment be denied.

Next, I consider the merits of TransUnion's motion to dismiss.

## LEGAL STANDARD

A defendant may move to dismiss a complaint when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Conversely, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (cleaned up).

When evaluating a Rule 12(b)(6) motion, I accept "all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 948 F.3d 673, 675 (5th Cir. 2020) (quotation omitted). "A document filed *pro se* is to be liberally construed, and a *pro se*

complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). "So long as a pleading alleges facts upon which relief can be granted, it states a claim even if it 'fails to categorize correctly the legal theory giving rise to the claim.'" *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 402 (5th Cir. 2013) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 604 (5th Cir. 1981)); *see also Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc.*, 7 F.4th 301, 309 (5th Cir. 2021). Even if a plaintiff fails to correctly identify the legal theory behind his claim, the Fifth Circuit has long held that if the plaintiff asserts "a valid claim, even if inartfully stated, the liberal approach of the federal rules requires that the plaintiff be given the opportunity to state his claim and to have it considered on the merits at trial or on motion for summary judgment." *Dussouy*, 660 F.2d at 604.

**ANALYSIS**

"Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). To achieve this purpose, the FCRA imposes various duties on "consumer reporting agencies" and furnishers of credit information. *See* 15 U.S.C. § 1681a(f). Construing Kelly's complaint in his favor, Kelly alleges facts upon which relief could be granted under two statutory provisions of the FCRA: § 1681i and § 1681e.

Section 1681i(a)(1)(A) requires a CRA to conduct a reasonable investigation in response to any consumer dispute of information appearing on that consumer's credit file. Specifically:

> if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance

> with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A). Thus, to state a claim under § 1681i(a)(1)(A), Kelly must allege that: (1) his consumer file contained inaccurate information; (2) he disputed the accuracy of information in his file and notified TransUnion; (3) TransUnion failed to conduct a reasonable investigation; (4) Kelly suffered damages; and (5) TransUnion's violation caused those damages. *See Reyes v. Equifax Info. Servs., L.L.C.*, 140 F.4th 279, 289 (5th Cir. 2025). Kelly has alleged each of these elements and TransUnion does not contend otherwise. Rather, TransUnion's sole defense is that it was required by the FCRA to report any overdue child support and therefore cannot be liable for inaccurate information in Kelly's consumer file that was reported to TransUnion by a state agency regarding overdue child support. *See* Dkt. 7 at 4–6 (citing 15 U.S.C. § 1681s-1). I will address this argument momentarily.

Section 1681e(b) requires every consumer reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Thus, to state a claim under § 1681e(b), Kelly must allege that: (1) TransUnion prepared a report containing inaccurate information; (2) the inaccuracy was due to TransUnion's failure to follow reasonable procedures to assure maximum possible accuracy; (3) Kelly suffered a cognizable injury; and (4) there is a causal link between TransUnion's failure and Kelly's injury. *See Potter v. GreenSky, LLC*, No. 5:19-cv-00581, 2019 WL 5295494, at *2 (W.D. Tex. Oct. 18, 2019). Kelly has alleged each of these elements and TransUnion does not contend otherwise. Again, TransUnion's sole defense is that because the FCRA requires it to report overdue child support information that it receives from state agencies, it cannot be liable for reporting such information even though the information may be inaccurate. *See* Dkt. 7 at 4–6 (citing 15 U.S.C. § 1681s-1). TransUnion reads § 1681s-1 too broadly.

The FCRA states: "Notwithstanding any other provision of this subchapter, a consumer reporting agency *shall* include in any consumer report furnished by the agency . . . *any* information on the failure of the consumer to pay overdue support." 15 U.S.C. § 1681s-1 (emphasis added). "Therefore, CRAs *must* include in their reports all information they receive from a government agency on a consumer's failure to pay support, regardless of other FCRA requirements." *Berry v. Experian Info. Sols., Inc.*, 115 F.4th 528, 535 (6th Cir. 2024). Because § 1681s-1 clearly requires CRAs to report overdue child support information—without reference to its accuracy—TransUnion's argument that it cannot be liable for reporting such information makes sense. *See id.* at 539 ("Experian's interpretation of § 1681s-1 as obviating the accuracy requirement otherwise imposed by § 1681e(b) could have reasonably found support in other courts, just as it did in the district court." (cleaned up)). But the analysis does not end with § 1681s-1. *See id.* at 536 ("The district court erred, however, in ending its analysis at this step.").

In 2024, the Sixth Circuit Court of Appeals became the first—and thus far, the only appellate court—to address in a published opinion whether a CRA can be liable for failing to reasonably investigate or follow reasonable procedures to assure maximum possibly accuracy of child support information. The Sixth Circuit held: "The FCRA does not allow [a CRA] to remain immune from liability for reporting incomplete information that could be materially misleading and impact [the consumer]'s perceived creditworthiness," even if that information comes from a state agency. *Id.* at 537. Specifically, the Sixth Circuit held that where, as here, a CRA is on notice that a consumer disputes the accuracy of an outstanding support balance reported by a state agency, it is not a reasonable investigation to simply ask that state agency to confirm the balance. *See id.* at 538. In other words, the FCRA's requirement that CRAs report child support information in the first place is not inconsistent with the FCRA's requirement that CRAs also conduct a reasonable investigation into reportedly inaccurate information once reported.

Not all courts have followed *Berry*'s approach. Some district courts have taken the position that "compliance with § 1681s-1 immunizes [a CRA] from suit under other sections of the FCRA." *Underwood v. Experian Info. Sols., Inc.*, No. 16 C 7829, 2017 WL 1250843, at *3 (N.D. Ill. Apr. 5, 2017); *see Johnson v. Trans Union, LLC*, No. 10 C 6960, 2012 WL 983793, at *6 (N.D. Ill. Mar. 22, 2012) ("Defendants cannot be held liable under two FCRA provisions (§ 1681e(b) and § 1681i) for reporting information that a third FCRA provision (§ 1681s–1) required them to report."), *aff'd*, 524 F. App'x. 268 (7th Cir. 2013).[2] But just as many, if not more, district courts have followed *Berry*'s approach. *See Silver v. Tex. Office of Attorney Gen.*, No. 3:25-cv-05712, 2025 WL 2592222, at *2 (W.D. Wash. Sep. 8, 2025) ("While not binding, the Court adopts the reasoning from *Berry* that while CRAs are required to report information from child support agencies, they are not as a matter of law protected from other claims under the FCRA for having done so."); *Watkins v. Experian Info. Sols., Inc.*, No. CV 23-20860, 2025 WL 79698, at *4 (D.N.J. Jan. 13, 2025) ("Therefore, while not binding, this Court adopts the Sixth Circuit's reasoning in *Berry* that, while CRAs are required to report information from child support agencies, they are not as a matter of law protected from claims under §§ 1681e(b) and 1681i for having done so."); *see also Chiarello v. Trans Union, LLC*, No. 2:17-cv-00513, 2018 WL 4698846, at *4 (E.D. Pa. Oct. 1, 2018) (refusing to grant summary judgment on plaintiff's § 1681e(b) claim because the defendants prepared a report that contained "inconsistent and irreconcilable information about his child support

[2] The Seventh Circuit was the first to address the intersection of § 1681i and § 1681s-1, but it did not have to confront the tension between these two provisions because the plaintiff "presented no competent evidence suggesting that the amounts of past-due child support the defendants reported were wrong." *Johnson v. Trans Union, LLC*, 524 F. App'x. 268, 270–71 (7th Cir. 2013). As discussed above, inaccuracy is required to state a claim under § 1681i or § 1681e. *See Reyes*, 140 F.4th at 286. Unlike in *Johnson*, however, Kelly has sufficiently alleged that the delinquent child support information reported by TransUnion was wrong. Dkt. 1-1 at 22 ("Texas can see per an interface that you are current."); *id.* at 33 ("Per an interface you are in compliance.").

payments, at least some of which must be inaccurate"). In the absence of any binding precedent, I too shall follow *Berry*.

Kelly has alleged that he provided TransUnion with Indiana court orders showing that Indiana was the state from which his child support obligations originated and the state to whom his child support is paid. TransUnion was also in receipt of emails from the OAG stating that Kelly was "current" and "in compliance." Dkt. 1-1 at 22, 33. These facts suggest that the OAG was reporting inaccurate information to TransUnion. Accordingly, it was unreasonable for TransUnion to have simply verified with OAG—the very source of the allegedly inaccurate information—the accuracy of the amounts it was reporting in arrears for Kelly. *See Berry*, 115 F.4th at 538. At a minimum, TransUnion could have contacted the Indiana child support authorities to see if Kelly was truly delinquent on his child support obligations. Accordingly, I find that Kelly has plausibly stated claims under § 1681i and § 1681e.

**CONCLUSION**

For the reasons discussed above, TransUnion's motion to dismiss (Dkt. 7) and Kelly's motion for default judgment (Dkt. 9) should both be denied.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 6th day of October 2026.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE